UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Board of Trustees of the Plumbers,
Pipefitters & Mechanical Equipment
Service, Local Union No. 392
Pension Fund, *et al.*,

       Plaintiffs,                            Case No.  1:12cv195

       v.                                    Judge Michael R. Barrett

B&B Mechanical Services, Inc., *et al.,*

       Defendants.

## **OPINION & ORDER**

This matter is before the Court upon Plaintiffs' Motion for Summary Judgment (Doc. 20) and Defendants' Motion for Summary Judgment (Doc. 21).  Both motions have been fully briefed (Docs. 23, 24, 26, 27).

**I.**       **BACKGROUND**

Plaintiffs bring claims against Defendants pursuant to Section 502 of the Employee Retirement Income Security Act ("ERISA") and Section 301 of the Labor-Management Relations Act, 29 U.S.C. §1132 and §185.  Plaintiffs are the Plumbers, Pipefitters & Mechanical Equipment Service Local Union No. 392 ("Union") and the board of trustees for several Union trust funds and a pension fund which receive contributions from employers pursuant to collective bargaining agreements between the

employers and the Union. Defendants are B&B Mechanical Services, Inc. ("B&B") and West American Insurance Company.[1]

B&B is a commercial plumbing contracting company. B&B is owned and operated by Bryan Kenny and William Williams. (Doc. 21-1, at 4, Bryan Kenny Decl. ¶ 2). Kenny and Williams are long-time members of the Union.[2] (Id., ¶ 3). Kenny and Williams formed B&B in 2002. (Id., ¶ 4). However, at that time, B&B was operating under the name B&B Plumbing & Piping, LLC. (Id.) In June of 2006, Kenny and Williams incorporated a company named B&B Plumbing & Piping, Inc., which was merged with B&B Plumbing, LLC in July of 2006. (Id.) In October of 2006, the name was changed to B&B Mechanical, which is the Defendant in this case. (Id.)

Defendants claim that at no time did any of these entities enter into a collective bargaining agreement with the Union. (Id.) Plaintiffs concede that a copy of a collective bargaining agreement signed by B&B has not been located, but claim that B&B is bound by the collective bargaining agreement ("the CBA") negotiated between the Mechanical Contractors Association ("MCA") and the Union.

In October of 2009, B&B, as B&B Mechanical, became a member of the MCA. (Doc. 20-12, Jack Bertoli Dep. at 12). The MCA assists mechanical and plumbing contractors who employ members of the Union. (Id. at 8). When the MCA negotiates a CBA with the Union, it negotiates one CBA on behalf of all of its members. (Id. at 42). Plaintiffs maintain that all MCA members are bound to the terms and conditions in the CBA as they are negotiated between the MCA and the Union. (Id. at 42-43).

---

[1] West American Insurance entered into a bond agreement with a predecessor of B&B to secure $5,000 worth of B&B's alleged obligation under the CBA.

[2] As of November 1, 2012, both Kenny and Williams are "inactive" members. (Doc. 20-5, Jim Higgins Aff. ¶¶ 5, 6).

2

However, Defendants explain that B&B never authorized the MCA to negotiate with the Union on its behalf. Defendants rely on the testimony of Jack Bertolli, the executive director of the MCA. Bertolli testified that B&B did not submit a signed "Appointment of Agent Form" to the MCA. (Doc. 21-1, at 53).[3] This Appointment of Agent form would permit the MCA to act as B&B's bargaining agent in contract negotiations with the Union. (Id. at 18-19). Bertolli also testified that membership in the MCA alone does not give the MCA the right to bargain on behalf of a member contractor. (Id. at 24).

Nevertheless, Plaintiffs claim that B&B manifested its intent to be bound by the CBA between the Union and the MCA through its conduct and the documents it signed which reference the CBA.

First, Plaintiffs explain that the CBA requires that employers make monthly reports of hours worked by covered employees and then make contributions to the Union trust funds based on the hours. (Doc. 20-4, CBA, Art. VIII). Each of the monthly reports includes a declaration which states:

> the above named contractor certifies that this report includes only employees covered under the terms of a collective bargaining agreement with the United Association or a United Association Local Union…

(Doc. 20-8). Contribution reports and contributions to the pension fund are accompanied by a similar declaration:

> the above contractor affirms and declares that it is a party to a written agreement requiring contributions to the Plumbers and Pipefitters National Pension Fund… and also certifies that this report includes only employees

---

[3]The Appointment of Agent form was sent to contractors with a cover letter explaining: "If you desire to have the MCA Committee bargain on your behalf for the purpose of establishing a new agreement, please sign the attached 'Appointment of Agent' form and return it to MCA of Cincinnati . . . " (Doc. 21-1. at 52).

3

covered under the terms of a collective bargaining agreement with the United Association, or a United Association local union...."

(Doc. 20-11).

In June of 2002, B&B's predecessor, B&B Plumbing, LLC, began submitting monthly reports, and in December of 2006 B&B Plumbing, LLC began making contributions to the Union trust funds and the pension fund. (Doc. 20-6, Rinda Hoffman Aff., ¶¶ 2, 3). These monthly reports and contributions continued until July 2012. (Id., ¶ 5). During the period of time in which B&B Plumbing was making contributions, the contribution rates changed. (Id., ¶ 6). Contractors were notified of the new rate. (Id., ¶ 7). B&B Plumbing made payments according to the rate changes. (Id., ¶ 8).

Next, Plaintiffs explain that under the CBA, contractors may request employees from the Union's Hiring Hall: "Requests by contractors for particular plumbers or pipefitters previously employed by contractors party to this agreement …. shall be given preference of rehire and shall be dispatched to that contractor." (Doc. 20-4, Article VI). In early 2007, B&B made two requests to the Union's Hiring Hall for employees. (Doc. 20-15).

Third, Plaintiffs point out that B&B agreed to a payroll compliance audit, which is required by the CBA. The audit was conducted in August of 2011 concluded that B&B owed approximately $130,000 the trust fund and pension fund. (Doc. 21-3, at 16-17). In that amount is included $118,285.60 which Plaintiffs claim should have been contributed on behalf of Williams and Kenny.

Plaintiffs explain that the CBA requires contractors to obtain a Wage and Welfare bond with a surety company in order to secure payment to the Trust Funds and the

4

Union. (Hoffman Aff. ¶ 11).[4] On June 5, 2002, B&B's predecessor, B&B Plumbing, LLC, entered into a Bond Agreement with Defendant West American for $5,000.00. (Doc. 20-17). The Bond Agreement states that B&B Plumbing, LLC "entered into a certain written contract of employment or has signed a letter of assent to be bound by the Terms of said Contract, titled Agreement between Mechanical Contractors Association of Cincinnati and Pipefitters Local Union No. 392, by which he agrees to pay his employees an agreed current wage scale and further to pay current contractual agreed amounts to various fringe benefit funds established under said agreement . . ." (Id.) On December 15, 2006, the name on the Bond Agreement was amended to read "B&B Mechanical Services, Inc." (Id.)

Finally, Plaintiffs explain that in April of 2008, B&B entered into the Equality and Stabilization Program Participation Agreement ("E&S Agreement"). (Doc. 20-13). Through wage subsidies, the E&S Agreement improves the competitiveness of contractors employing union members when bidding against contractors employing non-union members. (Bertoli Dep. at 27, 41). B&B requested wage subsidies under the E&S Agreement approximately four times and signed corresponding memorandums of understanding between itself, the Union, and the MCA. (Doc. 20-14). Each memorandum states that "[i]t applies specifically to the current Labor Agreement

---

[4]The CBA states:

> Prior to Local No. 392 being obligated to furnish plumbers, pipe fitters and service men to a contractor, each contractor signatory to this agreement shall qualify for a surety bond to secure the payments due the following funds and Union deduction requirements: Health and Welfare, Pension, Supplemental Unemployment, Education, Drug Free & Safe Work Place and Industry Promotion Fund, and all employee authorized vacation and Union dues deductions.

(Doc. 20-4, Article VIII).

negotiated and signed by the two parties." (Id.)  Defendants acknowledge that it received wage subsidies under the E&S Agreement, but also point out that the E&S Agreement states:

> The Local 392 Equality and Stabilization Program was adopted by the Membership and is administered by the Plumbers, Pipe Fitters & MES Local 392 U.A. The Program only effects parties to the Collective Bargaining Agreement between the MCA and the Union and does not seek to impose its terms on non-signatory Contractors.

(Doc. 20-13).

Plaintiffs have brought a claim against B&B for breach of the CBA and a claim for enforcement of bond against West American.

## II.    ANALYSIS

### A.    Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party has the burden of showing an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Where the parties have filed cross motions for summary judgment, a court "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party."  *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003).  "[T]he standards upon which the court evaluates the motions

for summary judgment do not change simply because the parties present cross-motions."  *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (citing *Home for Crippled Children v. Prudential Ins. Co.*, 590 F.Supp. 1490, 1495 (W.D.Pa.1984)).

### B.   ERISA

Plaintiffs seek to enforce the contribution requirements in the CBA pursuant to section 515 of Employee Retirement Income Security Act ("ERISA"), which provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

### C.   Labor Management Relations Act

Section 302(a) of the Labor Management Relations Act ("LMRA") prohibits employers from making payments to representatives of employees unless the payments fall within one of the statutory exceptions.  29 U.S.C. § 186(a).  One of these exceptions is found in Section 302(c)(5)(B), and allows employers to make contributions to a trust fund for employees where "the detailed basis on which such payments are to be made is specified in a written agreement."  29 U.S.C. § 186(c)(5)(B).[5]

---

[5] This exception provides in relevant part:

> The provisions of this section shall not be applicable . . . (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): Provided, That  . . . (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer . . .

7

In *Merrimen v. Paul F. Rost Elec., Inc.*, the Sixth Circuit declined "to hold that an employer which never signed its assent to a CBA is bound to make pension contributions in accordance therewith merely because it did so voluntarily for a time." 861 F.2d 135, 139 (6th Cir. 1988).[6]  However, in *Merrimen*, the CBA itself required the employer to sign a Letter of Assent in order to demonstrate acceptance of the CBA.  *Id.* at 136.  The Sixth Circuit later clarified that section 302(c)(5)(B) "does not specify any signature requirement and the term 'written agreement' is unambiguous in relation to such."  *Nat'l Leadburners Health and Welfare Fund v. O.G. Kelley & Co.*, 129 F.3d 372, 375 (6th Cir. 1997).   Therefore, the court concluded that "the statute is satisfied by a written agreement to which an employer is bound, not a written agreement to which an employer is bound which also carries that employer's signature."  *Id.* at 376.

The Sixth Circuit has also explained that "the written agreement required by § 302 need not be a collective bargaining agreement as long as it sets out the employer's obligation to contribute."  *Cent. States, Se. & Sw. Areas Pension Fund v. Behnke, Inc.*, 883 F.2d 454, 459 (6th Cir. 1989) (quoting *Central States Southeast & Southwest Areas Pension Fund v. Kraftco, Inc.*, 799 F.2d 1098, 1111 n.16 (6th Cir. 1986), *cert. denied*, 479 U.S. 1086 (1987)).

Here, the written agreement to which Plaintiffs claim Defendants are bound is the CBA between the MCA and the Union.  There is no dispute that B&B did not sign the CBA.  Therefore, the question is whether B&B manifested its intent to be bound through other documents or its conduct.

---

[6]The Sixth Circuit noted that "a literal construction of section 302(c)(5)(B) effectively forces pension funds, which are third-party beneficiaries of labor agreements, to be more vigilant as to the formalities of execution than are the parties to those agreements.  However, what disparity may exist in this regard derives from the express and unmistakable terms of Congress' mandate."  861 F.2d at 139 (footnote omitted).

Plaintiffs rely on the ten years of contributions made by B&B to establish that B&B was obligated to make contributions under the CBA.  However, voluntary contributions alone do not establish an employer's intent to be bound to a collective bargaining agreement.  *See Trustees of Plasters Local 67 Pension Trust Fund v. Martin McMahon Plastering, Inc.*, 844 F. Supp. 2d 843, 854 (E.D. Mich. 2012) (noting that in cases where voluntary contributions were found to support a conclusion that an employer was bound under the CBA, other factors contributed to that conclusion).

Plaintiffs also rely on the statements contained in the monthly contribution reports that B&B "affirms and declares that it is a party to a written agreement requiring contributions to the Plumbers and Pipefitters National Pension Fund . . . and also certifies that this report includes only employees covered under the terms of a collective bargaining agreement with the United Association or a United Association Local Union." (Doc. 20-11).  However, the Sixth Circuit has declined to hold that similar certification clauses in monthly bills establish a duty to contribute.  *Cent. States, Se. & Sw. Areas Pension Fund v. Gen. Materials, Inc.*, 535 F.3d 506, 510 (6th Cir. 2008) (finding that a certification clause included in monthly bills did not obligate the employer to contribute after the CBA expired).[7]  The Court notes that the certification clauses in the reports submitted by B&B do not state that B&B is a party to the CBA, but only refers to "a written agreement requiring contributions to the Plumbers and Pipefitters National Pension Fund" and "employees covered under the terms of a collective bargaining agreement with the United Association or a United Association Local Union."

---

[7]The certification clause in this case stated that the employer "hereby reaffirms [its] obligation to make contributions required by the Collective Bargaining Agreement and further represents that all employees eligible to participate in the Fund ... are being reported...." *Cent. States, Se. & Sw. Areas Pension Fund v. Gen. Materials*, Inc., 535 F.3d 506, 507 (6th Cir. 2008).

Plaintiffs also rely on B&B's changes in their contribution amounts, which correspond to changes in the CBA.  However, Defendants respond that B&B made payments according to the instructions provided to them from the Union.  (Kenny Decl., ¶ 3).

Plaintiffs also highlight the length of time B&B made contributions, and contrast this ten-year period of time to the one-year period of time found to be non-binding in *Merrimen*.  However, courts have rejected the use of estoppel to supply the written agreement required by § 186(c)(5).  *See Cent. States Se. & Sw. Areas Pension Fund v. D & K Distrib. Co.*, 774 F.2d 1161 (6th Cir. 1985) (collecting cases).

Next, Plaintiffs rely on two letters from B&B requesting employees from the Union's Hiring Hall.  The Court notes that in *Merrimen*, there was evidence that at least one grievance was processed under the CBA against the employer.  861 F.2d 136-37. Even though the employer complied with this term of the CBA, the Sixth Circuit found that "the instant record sets forth no evidence of assent under the CBA." *Id.* at 139.  By analogy, this Court comes to the same conclusion.  While the CBA provides for requests for employees through the hiring hall, the letters sent by B&B make no reference to the CBA.  One letter requests "for hire the following member of Local 392, Joseph W. Steiber."  (Doc. 20-15).  The other letter states: "We would like to request David M. Wendling as a Foreman to start for us on 2-6-07."  (Id.)

Plaintiffs also rely on the payroll compliance audit conducted by the Union in August of 2011.  (Doc. 20-10).  Plaintiffs explain that B&B did not object to the audit on the basis that it was not bound to the CBA.  (Doc. 20-16, Ryan Pattie Dep. at 40).

In *Trustees of Plasters Local 67 Pension Trust Fund v. Martin McMahon Plastering, Inc.*, the district court found that making voluntary contributions, furnishing fringe benefit contribution reports that included a certification that the payments were made pursuant to a collective bargaining agreement along with cooperation in several audits of fringe benefit contributions did not establish a course of conduct which would establish an intent to be bound by a master agreement between the union and an employer association. 844 F.Supp.2d at 852-55. The court noted that with the exception of the final audit, all the audits resulted in a finding of no liability. *Id.* at 855. The court concluded the cooperation with the audit "does not tell much about either party's intent or understanding." *Id.* This Court reaches the same conclusion.

As to the Bond Agreement between Defendants, the language from the Bond Agreement states that B&B entered into "a certain written contract of employment *or* has signed a letter of assent to be bound by the Terms of the [CBA]." (Doc. 20-17, at 4) (emphasis added)). B&B does not dispute that it was a member of the MCA. However, the Court notes that Article I, section 3 states of the CBA provides that: "In the event that a contractor not now a member of the party of the first part [MCA], is accepted for membership by the said party pursuant to its rules and regulations, this contact shall be made available for adoption to such contractor, who shall evidence his intentions in this regard by executing a copy of this agreement with the Union." There is no evidence that B&B evidenced its intentions to adopt the CBA by executing a copy of the agreement.

Finally, Plaintiffs rely on the four memoranda of understanding signed by B&B under the E&S Participation Agreement which state that the memorandum "applies

11

specifically to the current Labor Agreement negotiated and signed by [the Union and the MCA]." (Doc. 20-14). However, the Court notes that while B&B is a signatory to the memoranda, the memoranda clearly state in the first line that "[t[his Memorandum of Understanding is by and between Pipe Fitters Local Union Co. 392 and the [MCA]." (Id.) Moreover, as Defendants point out, the E&S Agreement itself states that the Agreement "does not seek to impose [the CBA's] terms on non-signatory contractors." (Doc. 20-13). While Bertoli explained that an employer's participation in the E&S program "implies that a contractor who is receiving E&S is a signatory contractor" (Bertoli Dep. at 22, 24), the Sixth Circuit has explained that "[a]n employer's intent to be bound by the benefits fund provisions of a collective bargaining agreement cannot be inferred when the employer has not signed a collective bargaining agreement." *Michigan Bricklayers & Allied Craftsmen Health Care Fund v. Nw. Const., Inc.*, 1997 WL 351296, *2 (6th Cir. June 23, 1997) (citing *Merrimen*, 861 F.2d 135 (6th Cir. 1988)).

This Court emphasizes that this is not a case where the employer signed a CBA and then continued to act as if it were bound to the CBA after it expired. *See Trustees of Plumbers & Steamfitters Local Union No. 43 Health & Welfare Fund v. Crawford*, 1:06-CV-245, 2007 WL 4481440 (E.D. Tenn. Dec. 18, 2007) (noting that courts have held that "an expired, signed collective bargaining agreement may continue to bind an employer if the employer demonstrates an intent to continue to be bound.").[8] In this

---

[8]The Sixth Circuit has called into doubt whether an employer may be bound by an expired CBA solely on the basis of its conduct. In *Central States, Southeast & Southwest Areas Pension Fund v. General Materials, Inc.*, 535 F.3d 506 (6th Cir. 2008), the court explained that its finding of a duty to contribute based on an expired CBA in *Central States, Southeast and Southwest Areas Pension Fund v. Behnke, Inc.*, 883 F.2d 454 (6th Cir.1989) was established in an interim agreement which extended the obligations of the CBA beyond its expiration.

instance, B&B never signed the CBA and never explicitly authorized the MCA to act as its bargaining agent in contract negotiations with the Union.

Based on the foregoing, the Court concludes that B&B was not obligated to make contributions under the CBA.

### D. Contributions on behalf of Williams and Kenny

Due to the foregoing conclusion, the Court finds it unnecessary to reach the issue of whether contributions were required to be made on behalf of Williams and Kenny, or reach the corresponding dispute as to Plaintiffs' damages calculation.

### III. CONCLUSION

Based on the foregoing, Plaintiffs' Motion for Summary Judgment (Doc. 20) is **DENIED** and Defendants' Motion for Summary Judgment (Doc. 21) is **GRANTED**. The Court finds that there are no remaining issues for determination in this matter, and therefore this matter is **CLOSED** and **TERMINATED** from the active docket of this Court.

**IT IS SO ORDERED.**

                                                *s/Michael R. Barrett*
                                               JUDGE MICHAEL R. BARRETT